# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action Number |
| ) | 05-00169-01-CR-W-DW |
| Jarvis T. Williams, ) | |
| ) | |
| Defendant. ) | |

## Report and Recommendation

Pending before the Court is Defendant Jarvis T. Williams' *Motion To Suppress*, filed December 1, 2005 (Doc. #35). On January 12, 2006, the undersigned held an evidentiary hearing on the referenced motion. Defendant Williams was present and was represented by his counsel, James Brown. The government was represented by Assistant United States Attorney Bruce Clark. At the evidentiary hearing, the government called Officer Christopher Jones and Officer Ryan Sharp of the Grandview Missouri Police Department as witnesses. Defendant Williams called Navnit Patel, Hotel Manager of the Super 8 Motel in Grandview, Missouri. On the basis of all the evidence adduced at the evidentiary hearing, the undersigned submits the following:

### PROPOSED FINDINGS OF FACT

1. On March 15, 2005, officers of the Grandview Missouri Police Department were dispatched to the Super 8 Motel in Grandview, Missouri in response to a report of

1

the smell of marijuana in the second floor hallway of the motel. (Tr. 4-5, 23)

2. Upon their arrival at the motel, the officers responded to the second floor hallway and spoke with the motel guest responsible for the report[1] who told the officers that he had been walking down the hall and smelled marijuana smoke but did not know from which room the smell was coming. (Tr. 6, 19, 23)

3. The officers walked the second floor hallway and determined that the smell appeared to be coming from Room 221. (Tr. 6, 23)

4. Officer Sharp knocked on the door of Room 221. An individual from inside Room 221 asked who it was. Officer Sharp responded that he was management and needed to open the door. The individual said, "hold on a minute" and the officers then heard what they described as a "rustling" sound similar to the sound of someone placing something inside a baggie or dumping something from a baggie. A moment later the door opened. (Tr. 6)

5. When the door was opened by an individual later identified as Alex Davis, the officers noticed a thick cloud of smoke smelling of marijuana inside the room. A towel blocking the bottom of the door was on the floor. (Tr. 6, 24)

6. The officers asked Davis to step into the hallway. Davis immediately told the officers that he had just been smoking a little marijuana and then produced a small baggie of marijuana and told officers that was all he had left. (Tr. 7, 24)

7. The officers then asked Davis if there was anyone else in the room. Davis said, "No, you can go in and look." (Tr. 7, 24)

8. Officer Sharp and Officer Jones entered Room 221 while Officer Graef stayed in the hallway with Davis. No one else was in the room. (Tr. 7, 24)

9. While inside the room, Officer Jones saw marijuana on the table and marijuana butts in the ashtray. Officer Sharp recovered a large bag in the microwave which contained what the officers recognized as counterfeit currency.[2] (Tr. 7-8, 24-25, 31-32) Officer Jones also saw a large bulge sticking out of the corner of the bed.

---

[1] Officer Jones remembers the hotel guest as having been an MP from Richard-Gebaur Air Force Base who was staying at the hotel that night. (Tr. 16) The guest told the officers that there was a smell in the hallway that he recognized as marijuana and asked the officers to check it out. (Tr. 16)

[2] It was later determined that the total amount of counterfeit currency in the bag was $7,400. (Tr. 8)

He lifted the mattress and observed a loaded assault rifle. (Tr. 8, 24-25, 31)

10. Officer Jones advised Officer Graef that he had found a gun, at which time Officer Graef arrested Davis. (Tr. 8, 25) Davis stated that the gun did not belong to him and must have been left there by a previous motel guest. (Tr. 8)

11. As Officer Jones exited Room 221, Davis asked for his coat. Officer Jones retrieved the coat and upon checking it for weapons found another large bag of marijuana inside one of the pockets. (Tr. 9)

12. While standing in the hall under arrest, Davis stated that he had also rented Room 222 across the hallway. (Tr. 9, 36-37) Davis also stated that whoever owned the weapon and the money had to be in Room 222. (Tr. 15, 25-26) Davis repeatedly stated, "I wish you guys would go in that room and get those guys." (Tr. 25-26, 33-34, 36-37)

13. While Officer Sharp escorted Davis to the patrol car, Officer Graef remained in the second floor hallway while Officer Jones went downstairs and informed motel management, Mr. Navnit Patel, that Davis was being arrested on narcotics and various other charges and would not be occupying Room 221 any longer. (Tr. 9, 17)

14. Patel told Officer Jones that Davis had also rented the room across the hall (Room 222) and asked Officer Jones to check that room as well and make certain no one was inside the room. (Tr. 9-10, 42-43, 45, 53-55) Officer Jones testified that Patel told Officer Jones that he did not believe anyone had arrived with Davis and that no one other than Davis was supposed to be occupying Rooms 221 and 221. (Tr. 10)[3]

15. Officer Jones and Patel went to the second floor of the motel, where Officer Jones knocked on the door of Room 222 several times and announced himself as a police officer. After receiving no response, Officer Jones asked Patel for the key. (Tr. 11, 19)

16. When Officer Jones put the key into the lock and started to open the door, the

---

[3] Patel testified that at the time Davis rented both rooms, he told Patel that he "had a friend coming in." (Tr. 42, 58) Patel further testified that he asked Davis if he should put down another name and Davis said no. (Tr. 42, 58) Accordingly, Patel testified that it was "no surprise" to him that there might be other people in Room 222. (Tr. 42, 48-50, 58-59) However, Patel repeatedly testified that, out of concern for the security of his other guests, he asked Officer Jones to check out Room 222 in light of the fact that Davis had just been arrested for illegal weapons and narcotics. (Tr. 47-48, 54, 55, 56-57, 58)

3

door slammed closed. Officer Jones again announced himself as a police officer and told whoever was inside they needed to open the door. The individual inside – later identified to be Defendant Williams – asked if he could get dressed first. Officer Jones replied, "No, you need to open the door now." The door opened with the chain in place and Defendant Williams repeated, "I'm not dressed, let me get dressed first." Officer Jones told Defendant Williams that if he did not open the door the officers were going to force the door open. Officer Jones looked at Patel who nodded, giving his permission to force open the door. The door immediately slammed closed and the dead bolt was put in place. (Tr. 11).

17. Officer Jones kicked at the door and then heard what he believed to be the sound of a weapon being chambered. (Tr. 11, 20) Officers Jones and Graef then moved to either side of the door of Room 222, at which time Officer Jones heard what he believed to be a window opening. Officer Jones told Officer Graef that he believed Defendant Williams was going out the window. Officer Jones then forced the door open with his shoulder and entered Room 222. (Tr. 12)

18. Upon entering the room, Officer Jones saw Defendant Williams on the window sill attempting to get the window open. (Tr. 12) Officer Jones ordered Defendant Williams at gunpoint to get on the floor. Defendant Williams came off the window sill and laid down next to the bed with his hands off to the side. Officer Graef handcuffed Defendant Williams while Officer Jones kept him at gunpoint. (Tr. 12)

19. As Officer Graef was patting down Defendant Williams, Officer Jones pulled the mattress back and discovered a loaded handgun under the mattress. The magazine contained ammunition but there was no round in the chamber of the handgun. (Tr. 12-13, 20-21) Defendant Williams stated that the gun did not belong to him and that it must have been left by a previous guest. (Tr. 13)

## PROPOSED CONCLUSIONS OF LAW

Defendant Williams has moved the Court to suppress any and all evidence obtained by law enforcement officers during his arrest, search of his person and search of Room 222 on March 5, 2005. In support of his motion to suppress, Defendant Williams argues that the search of Room 222 was illegal in that it occurred "without any probable cause, reasonable suspicion, warrant or observed violation." *Motion to Suppress,* Doc. #35 at p.2. In response, the Government argues that Defendant William cannot challenge the search because, as a mere

4

occupant of the hotel room, he had no legitimate expectation of privacy in Room 222. The Government further contends that even if Defendant Williams could establish a reasonable expectation of privacy in Room 222, "there [were] a number of reasons justifying the officers' entry into Room 222 including actual consent to search by those having the authority to do so; apparent consent to search by those having the authority to do so; and exigent circumstances." *Government's Response To Defendant's Motion To Suppress,* Doc. #38-1 at 4.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the Fourth Amendment, the constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960). Nonetheless, as the United States Supreme Court pointedly noted over one hundred years ago:

> No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law.

*Union Pacific Railroad Co. v. Botsford*, 141 U.S. 250, 251, 11 S.Ct. 1000, 1001 (1891).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant. However, over the years, many exceptions to the warrant requirement have been recognized. For instance, in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968), the Supreme Court held that a law enforcement officer can stop and briefly detain a person for investigatory purposes, even without a warrant, if the officer has a reasonable suspicion – supported by articulable facts – that criminal activity "may

5

Case 4:05-cr-00169-DW   Document 50   Filed 02/01/06   Page 5 of 9

be afoot," even if the officer lacks probable cause for an arrest. *Id*. at 30, 88 S.Ct. at 1884-85.  In this case, there was no warrant.  As such, two distinct issues are raised, to wit: (1) did Defendant Williams have protected Fourth Amendment rights in Room 222, and (2) if he did, was there a valid exception to the warrant requirement of the Fourth Amendment (*e.g.*, consent and/or exigent circumstances).  The Court concludes that the actions of the law enforcement officers in this case were justified and not in violation of Fourth Amendment in that:

(1) Defendant Williams had no legitimate expectation of privacy in Room 222;

(2) Alex Davis, in whose name Room 222 was registered, validly consented to a search of Room 222; and

(3) Exigent circumstances existed justifying forced entry into Room 222.

The Court will briefly address each rationale.

It is well settled that merely because individuals are guests in a hotel, motel, inn or other temporary accommodation, they are still generally entitled to the protections of the Fourth Amendment against unwarranted searches and seizures.  *See*, *e.g.*, *United States v. Roby*, 122 F.3d 1120, 1125 (8th Cir. 1997).  Indeed, the initial analysis in such cases is the same no matter the setting – did the defendant have a legitimate expectation of privacy.  If the answer is no, then the Fourth Amendment analysis ends.

In this case, the fact that Defendant Williams was not the registered guest for Room 222 is compelling evidence that he was a mere visitor to the hotel room.  The courts have concluded that such "mere visitors" to someone else's hotel/motel room do not enjoy an expectation of privacy protected by the Fourth Amendment.  *See*, *e.g.*, *Minnesota v. Carter*, 525 U.S. 83, 90, 110 S.Ct. 1684) (1998); *United States v. Sturgis*, 238 F.3d 956, 958-59 (8th Cir. 2001); *United*

*States v. Carter*, 854 F.2d 1102, 1105-06 (8th Cir. 1988) (among the factors to be considered when evaluating a person's expectation of privacy in a motel room are the facts that the occupier never checked into the room, nor paid for the room"). Based on the evidence presented at the suppression hearing,[4] there is insufficient evidence to establish that Defendant Williams was anything more than a mere visitor to Room 222. As such his Fourth Amendment rights were not violated by the law enforcement officers entry into Room 222 nor by any of the actions that followed thereafter.

Furthermore, even if Defendant Williams did have a legitimate expectation of privacy in Room 222, it is established law that an exception to the warrant requirement of the Fourth Amendment is consent to search. *Florida v. Jimeno*, 500 U.S. 248, 251, 111 S.Ct. 1801 (1991). In this case, there is credible evidence that Alex Davis, in whose name Room 222 was registered, validly consented to a search of the room.

An instructive case in this regard is *United States v. Burns*, 298 F.3d 523 (6th Cir. 2002). In *Burns*, one defendant (Harden) moved to suppress evidence found during a search of the motel room of another defendant (Burns). *Id*. at 542. Burns consented to a search of the motel room – a search that found Harden and two bags of cocaine in the room. *Id*. at 534.

---

[4] With regard to Fourth Amendment analysis, the defendant bears the burden of establishing that he had a legitimate expectation of privacy. *See*, *e.g.*, *United States v. Green*, 275 F.3d 694, 699 (8th Cir. 2001).

7

The Sixth Circuit, in affirming a denial of Harden's motion to suppress, concluded that Burns had at least "common authority or control"[5] over the motel room, reasoning:

> The concept of "common authority or control" enables a co-occupant such as Burns to consent to a search if that party has the right to use or possess the property. Burns rented the room, had a key, and was the sole registered occupant. He therefore had the right to use or possess the room and the ability to consent to a search regardless of Harden's presence there.

*Id.* at 542. In this case, even if one assumed that Defendant Williams was an overnight guest in Room 222 clothed with a legitimate expectation of privacy under the Fourth Amendment, by allowing Alex Davis to register as the legitimate occupier of the room, pay for the room and be given a key to the room, Defendant Williams assumed the risk that Alex Davis might consent to a search of Room 222.

Finally, even assuming that Defendant Williams had a legitimate expectation of privacy in Room 222 and assuming that Alex Davis could not validly consent to a search of that room, the law enforcement officers were entitled to forcibly enter Room 222 based on the exigent circumstances then appearing to them. It is axiomatic that emergency circumstances may take precedence over traditional Fourth Amendment concerns and permit law enforcement officers to take actions that might otherwise require a warrant.

---

[5] The Supreme Court has defined "common authority or control" as:

> [The] mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any use of the co-habitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their members might permit the common area to be searched.

*United States v. Matlock*, 415 U.S. 164, 171 n.7, 94 S.Ct 988 (1974).

While the exigent circumstances exception "is narrowly drawn," it applies "if lives are threatened, a suspect's escape is imminent, or evidence is about to be destroyed." *United States v. Ball*, 90 F.3d 260, 263 (8th Cir. 1996). Moreover in assessing that danger during subsequent court proceedings, "[t]he question . . . is not whether there was actual probable cause and exigent circumstances, but whether the officers could reasonably have thought so." *Greiner v. City of Columbia*, 27 F.3d 1346, 1353 (8th Cir. 1994). In this case, the loaded weapon and narcotics found in Room 221 and Alex Davis' statement that the gun belonged to the people in Room 222, the apparent sound of a weapon being chambered in Room 222, and the apparent sound of someone attempting to escape through the motel window in Room 222, all combined to create a sufficiently reasonable emergency situation to justify the action of entering Room 222 forcibly.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** Defendant Jarvis T. Williams' *Motion To Suppress*, filed December 1, 2005 (Doc. #35).

Counsel are reminded that each has 10 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                                                         */s/ John T. Maughmer*
                                                                          **John T. Maughmer**
                                                        **United States Magistrate Judge**